IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SERVICE 1st VENDING, INC.,
:
:
v.    :    Civil Action No. DKC 20-3723
:
COMPASS GROUP USA, INC.,
:
:

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this action alleging tortious interference with contractual relations is a motion to dismiss or, in the alternative, for a more definitive statement. (ECF No. 2). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted.

**I.   Background**

Unless otherwise noted, the facts outlined here are set forth in the complaint[1] and construed in the light most favorable to Plaintiff. Plaintiff Service 1st, Inc. ("Service 1st") is a Maryland corporation with its principal place of business in Baltimore, Maryland. Around October 3, 2016, Plaintiff executed

---

[1] The factual allegations in the complaint are not entirely chronological, and the narrative jumps around in places, with little explanation. The central facts of the complaint have therefore been rearranged to piece together a clearer chronology of events.

a contract with the Maryland State Department of Education, Division of Rehabilitative Services ("DORS") to "provide vending machines for various rest stops in the State of Maryland." Plaintiff "was notified to proceed" in its performance of this contract on January 30, 2017. Plaintiff alleges that the "contract preceding Plaintiff's contract was held by Defendant" Compass Group USA, Inc ("Compass"). Compass is a Delaware corporation with a principal place of business in Charlotte, North Carolina.[2]

At some point, although it is not stated when, Defendant and Plaintiff reached a purported agreement "to substitute Defendant's vending machines to be placed at certain rest stops effective November 15, 2018." A representative of Defendant, however, notified Plaintiff on November 2 that Compass was cancelling this agreement. Plaintiff reports that it received on November 4 a "Notice of Default/Notice to Cure regarding requirements and responsibilities specified in the Contract" from DORS.[3] This notice gave Service 1st until the afternoon of November 15 "to cure the cited issues" and notified it that failure to do so would

---

[2] Plaintiff alleges that Compass is a Maryland corporation with two principal places of business — one in Spartanburg, South Carolina and one in Baltimore — but there cannot be two for diversity purposes. *See Hertz v. Friend*, 559 U.S. 77, 93 (2010) ("A corporation's 'nerve center,' usually its main headquarters, is a single place."). Neither is accurate as Defendant has provided records from the North Carolina Secretary of State that confirm its headquarters and citizenship there. (ECF No. 1-5).

[3] The notice itself is dated November 5, 2018, however.

result in termination of the contract. (ECF No. 4-2). Even though the purported agreement between Service 1st and Compass was cancelled before the Notice of Default from DORS was allegedly received, it appears that Plaintiff anticipated its arrival or, at least, was aware of the alleged deficiencies in performance that the notice highlighted; the complaint says its agreement with Compass was sought to "transition and substitute" Defendant's machines for Plaintiff's specifically in order "to resolve the issues identified in the Notice of Default."

Ultimately, Plaintiff says it received a Notice of Termination from the state agency on November 27. It further alleges that, on the same day, Defendant and DORS entered into an agreement that Compass would replace Service 1st's machines throughout Maryland. Compass was "awarded" the contract on January 1, but purportedly without approval from the Maryland Board of Public Works. Although Plaintiff says Compass was given an official "Notice to Proceed" on January 16, it says this notice was issued "in violation of Maryland procurement law." Similarly, it alleges that Defendant's physical removal of its units, beginning on January 31, also constituted a violation of Maryland procurement law. It was not until March 20, Plaintiff reports, that an emergency request to accept Defendant's contract with DORS was put before the state's Board of Public Works, and the Board rejected it. Despite this, Plaintiff asserts that Defendant

3

continued to operate and install its vending machines from February 2019 until September 2020.

Plaintiff subsequently brought a complaint in the Circuit Court for Baltimore County alleging a single count, "TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS," and demanding "all damages allowed by law" in an amount "in excess" of $75,000, including interest, costs, and attorneys' fees. (ECF No. 4). Defendant removed the case, citing diversity of citizenship. (ECF No. 1).

The day it filed its notice of removal, Defendant also filed the pending motion to dismiss for failure to state a claim or, in the alternative, for a more definitive statement. (ECF No. 2). A week later, Plaintiff filed its opposition (ECF No. 10), and ten days later Defendant filed a reply. (ECF No. 11).

**II.  Standard of Review**

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). "[T]he district court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in plaintiff's favor." *Mays v. Sprinkle*, No. 19-1964, 2021 WL 1181273, at *2 (4th Cir. Oct. 27, 2020) (reversing a district court's dismissal of a complaint because "we must accept the well-pleaded facts and draw reasonable inferences in favor of the plaintiff"). In evaluating the complaint, unsupported legal

4

allegations need not be accepted.  *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989).  Legal conclusions couched as factual allegations are insufficient, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), as are conclusory factual allegations devoid of any reference to actual events.  *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)).  Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

**III. Analysis**

Distilled to its essence, the situation is as follows: Plaintiff had a contract with the state to provide and service vending machines at rest stops.  It was having problems performing that contract and reached out to Defendant for assistance. Defendant at first agreed to help, but then changed its mind. Plaintiff was unable to perform, and its contract was terminated. Defendant stepped in and took over the contract with the state. Plaintiff's entire claim is predicated on an alleged cancellation

5

of an agreement by Defendant.  Yet Plaintiff expressly disavows any attempt to bring a breach of contract claim against Defendant, and instead tries to morph its allegations into a tort by claiming that this cancellation caused it to default in its separate contract with DORS.  The precise cause of action under Maryland law that Plaintiff intends to pursue is unclear.  As will be seen, under either iteration of a tortious interference claim, the complaint fails to allege necessary elements, and it appears that Plaintiff would be unable to do so even if allowed to amend.

Under Maryland law, "[t]ortious interference with business relationships arises [] out of the relationship between three parties, the parties to a contract or other economic relationship ... and the interferer."  *Baron Fin. Corp. v. Natanzon*, 471 F.Supp.2d 535, 539 (D.Md. July 11, 2006) (citing *K&K Mgmt. Inc. v. Lee*, 316 Md. 137, 154 (1989)).  "A party may maintain an action 'upon the doctrine that a man who induces one of two parties to a contract to break it, intending thereby to injure the other or to obtain a benefit for himself, does the other an actionable wrong.'"  *Id.* at 539 & n.3 (quoting *Nat. Design, Inc. v. Rouse Co.*, 302 Md. 47, 69 (1984)) (explaining this tort comes in two flavors:  "1) the intentional and improper inducement of a breach of an existing contract; and 2) the intentional and improper interference with prospective business relationships.").

6

**A.   Tortious Interference with Contract**

This court has previously explained that:

> A claim of tortious interference with an existing contract has five required elements: "(1) existence of a contract between plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional interference with that contract; (4) breach of that contract by the third party; and (5) resulting damages to the plaintiff."

*Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, No. DKC 2002-1565, 2007 WL 9782461, at *3 (D.Md. Sept. 17, 2007) (quoting *Fowler v. Printers II, Inc.*, 89 Md.App. 448, 466 (1991)); *see also Ultrasound Imaging Corp. v. The Am. Soc'y of Breast Surgeons*, 358 F.Supp.2d 475, 479 (D.Md. 2005) (same and relied upon by Defendant).

"A defendant has not induced a breach of contract under a tortious interference theory when the third party . . . has already repudiated the contract in advance of the alleged inducement[,] because the defendant's conduct could not have induced the breach under these circumstances."  *Sensormatic*, 2007 WL 9782461, at *4 (citing *Prudential Real Estate Affiliates, Inc. v. Long & Foster Real Estate Inc.*, 208 F.3d 210, at *6 (4th Cir.  Mar. 6, 2000) (unpublished table opinion)).

While Plaintiff has alleged facts sufficient to establish that it had a contract with a third party and that Defendant was aware of that contract, and possibly that it suffered damages, the

complaint fails to contain facts establishing the other two elements. First, the nature of the supposed interference is unclear. Plaintiff's complaint centers around the fact that Defendant cancelled an agreement upon which Plaintiff was allegedly relying to fulfill its contract with DORS. The purported terms of this agreement, however, are nowhere explicitly described. The only substance provided is that the parties agreed "to substitute Defendant's vending machines to be placed at certain rest stops effective November 15, 2018." The complaint suggests that the cancellation of this agreement on November 2 somehow interfered with Plaintiff's contractual obligation to DORS. Plaintiff states that the cancelled agreement had been executed specifically "to resolve the issues" stated in the "Notice of Default/Notice to Cure regarding requirements and responsibilities specified in the Contract." (ECF No. 4, ¶ 9). As implicit proof that the cancellation was intentional and aimed at interfering in Plaintiff's contract with DORS, Plaintiff asserts that:

> Defendant entered into an agreement with DORS on or about November 27, 2018 to substitute and replace Plaintiff's vending machines at various rest stops in the State of Maryland and was awarded a contract on or about January 1, 2019 by DORS without approval of the Maryland Board of Public Works.

(*Id.*, ¶ 11). According to Plaintiff, it was "no coincidence and it is entirely plausible that Compass's actions amounted to an

8

interference with the contract between Service 1st and DORS." (ECF No. 10-1, at 5).

Even if Plaintiff provided more clarity on this underlying agreement with Compass, it would not save the claim. Plaintiff admits that the purported deficiencies in its performance with DORS existed and were known before an alleged agreement with Compass was reached. While Service 1st may not yet have received the Notice of Default, the "issues" it highlighted were the express impetus behind any understanding the two parties ultimately did reach, by Plaintiff's own telling. The "Notice of Default and Notice to Cure" is attached to the complaint, and it states that Plaintiff was in material breach of its contract with DORS for changing prices without authorization, not keeping the vending machines in working order, not paying commissions correctly, and for DORS's inability to verify those paid commissions. (ECF No. 4-2). The complaint states that the contract with Compass (that aimed, at least, to cure the failure to provide operable machines) was to be "effective November 15, 2018,"[4] which was the

---

[4] Plaintiff stresses that it is not raising a breach of contract claim against Defendant but instead argues in its opposition that "Compass terminated its oral agreement which resulted in a breach of contract by DORS." (ECF No. 10-1, at 7). This is another, improper attempt to re-craft the allegations into the required elements of a tortious interference claim. The complaint itself only claims "Defendant has interfered with Plaintiff's contract with DORS . . . in other ways, under the circumstances, to be determined." (ECF No. 4, ¶ 16). It does

day by which DORS demanded that Service 1st cure its "material breach" of their contract in the Notice of Default.  (ECF No. 4-2, at 1).  Plaintiff seems to suggest, nonetheless, that more could have been done to cure this breach, if not for Defendant's conduct and despite this tight timeline.

But even assuming Compass's cancellation was improper (which the Plaintiff does not allege), it is even less clear how this alleged failure could have itself induced DORS to **breach** the contract as is required for this type of tortious interference claim.  The complaint fails even to allege that DORS was ever, actually in breach; instead Plaintiff claims Defendant's cancellation of their agreement was "intentional, willful and calculated to cause damage to Plaintiff's lawful ability to perform its contract with DORS."[5]  (ECF No. 4, ¶ 16(the 2d)).  The only evidence of breach put forward by Plaintiff suggests that it, and not DORS, was the party in material breach; this failure to allege

---

allege that both Defendant and DORS operated in violation of Maryland procurement law, but it does not attempt to bring a claim under this law.  (ECF No. 4, ¶¶ 14, 15).  Even accepting that the complaint's vague allegation of interference by Defendant can be read to imply a breach of contract by DORS, Plaintiff fails to establish a causal connection between DORS's alleged breach, on the one hand, and either Defendant's alleged cancellation of their agreement or it and DORS's alleged violation of procurement law, on the other. (ECF No. 2-1, at 7-8).

[5] Plaintiff's opposition does state that cancelling the contract "during its term of years" put DORS in breach of its obligations therein, but, again, the opposition cannot amend the complaint in this way.  (*See* ECF No. 10-1, at 5).

that DORS was ever in breach is fatal to this type of tortious interference claim under Maryland law. That DORS subsequently and immediately entered into a contract with Defendant upon terminating Plaintiff does not alone suffice to make out such a claim.

Accordingly, the complaint fails to allege plausibly at least two required elements of a tortious interference with contract claim.

Plaintiff will not be granted leave to amend its complaint with regard to this type of tortious interference claim as to do so would be futile. Fed.R.Civ.P. 15. It simply cannot be alleged that anything Defendant did caused DORS to terminate the contract. The contract between DORS and Plaintiff states that, "If the Contractor fails to fulfill its obligations under this Contract properly and on time, or otherwise violates any provision of the Contract, the State may terminate the Contract by written notice to the Contractor." (ECF No. 2-2, ¶ 17). The Notice of Default is such notice, and, having issued it, DORS was within its rights to terminate the contract in light of Plaintiff's failure to cure.

The complaint itself does not dispute that DORS had such a termination right but instead blames Compass for what amounts to false promises of performance and ones that prevented it from performing in its own contract with DORS. But Maryland caselaw has repeatedly stressed that it is the defendant's "intentional

11

inducement of the *third party to breach* or otherwise render impossible the performance of the contract" followed by "the subsequent breach *by the third party*" that is prohibited as a "Tortious Interference with Contracts." *Finley Alexander Wealth Mgmt., LCC v. M&O Mktg., Inc.*, No.:GJH-19-1312, 2020 WL 1322948, at *13 (D.Md. Mar. 20, 2020) (citing *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 352-54 (4th Cir. 2013)) (emphasis added).  As alluded to, seeing through the gloss that Plaintiff attempts to add in opposition, the complaint boils down to an allegation that Compass caused Service 1st, and not DORS, to breach its contract. (*See* ECF No. 4, ¶ 7) ("cancellation of the agreement was intentional to interfere *with Plaintiff's ability to continue performing* its contract with Dors") (emphasis added).  In this sense, what Service 1st really is alleging is that Compass was what amounts to a subcontractor vis-à-vis the underlying contract with DORS, as Defendant argues (ECF No. 11, at 3), and failed in its obligations as such; this is just a contract claim against Compass in disguise.[6]

---

[6] Some states do allow a Defendant's induction of a *plaintiff's breach* of an agreement with a third-party to constitute a tortious interference claim.  They still require, however, that the plaintiff state at least a plausible theory of how the defendant's conduct induced that breach. (Maryland law, of course, does not recognize this version.)  When dealing with such a claim under New York law, for example, this court said that, "the 'critical inquiry' is whether Plaintiff's employees would have breached their obligations . . . 'without the involvement' of

B.  **Tortious Interference with Economic Relations**

It may be that Plaintiff's theory better fits under the rubric of the other Maryland tort, namely "tortious interference with economic relationships."  *See, e.g.*, *Ultrasound Imaging*, 358 F.Supp.2d at 479 & n.2; *see also Faddis Concrete, Inc. v. Brawner Builders, Inc.*, No. ELH-15-3975, 2017 WL 4098739, at *12 (D.Md. Sept. 15, 2017) ("[U]nder Maryland law, one may claim tortious interference with a contract or, in the absence of a contract or breach of contract, one may claim tortious interference with business or economic relations."); *Kaser v. Fin. Prot. Mktg., Inc.*, 376 Md. 621, 628 (2003) ("The present case does not involve an allegation of wrongful interference with any one specific contract.  Instead, the plaintiff [] complains of . . . alleged wrongful interference with the ongoing business relationship . . . .").

The Court of Appeals of Maryland explained the necessary elements of this claim:

> Almost one hundred years ago, this Court in *Willner v. Silverman,* [109 Md. 341, 355 (1909)] . . . held that the elements required to establish the tort of wrongful interference with contractual or business relations are as follows:

---

Defendant, the alleged 'interfering party.'" *CompuSpa, Inc. v. Int'l Bus. Machs. Corp.*, No. Civ.A. DKC 2002-0507, 2004 WL 1459272, at *7 (D.Md. June 29, 2004) (quoting *Antonios A. Alevizopoulos and Assocs., Inc. v. Comcast Int'l Holdings, Inc.*, 100 F.Supp.2d 178, 187 (S.D.N.Y. 2000)).

13

>  (1) intentional and wilful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting.

> *See also Alexander* [*& Alexander Inc.*] *v.* [*B. Dixon*] *Evander* [*& Assocs., Inc.*, 336 Md. 635, 652 (1994)]; *K&K* [*Mgmt.*] *v. Lee*, [] 316 Md. at 160; [*Nat.*] *Design, Inc. v. Rouse Co.* [] 302 Md. at 71.

> Furthermore, "this Court has refused to adopt any theory of tortious interference with contract or with economic relations that 'converts a breach of contract into an intentional tort.'" *Alexander v. Evander,* [] 336 Md. at 654, quoting *K&K* [*Mgmt.*] *v. Lee,* [] 316 Md. at 169. *See also Alexander v. Evander* [] 336 Md. at 657 ("wrongful or malicious interference with economic relations is interference by conduct that is independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships"); *Macklin v. Robert Logan Assocs.,* [334 Md. 287, 301 (1994)] ("To establish tortious interference with prospective contractual relations, it is necessary to prove both a tortious intent and improper or wrongful conduct"); *Travelers Indemnity v. Merling*, [326 Md. 329, 343 *cert. denied,* 506 U.S. 975 (1992)] ("For one to recover for tortious interference with contractual or economic relations, the interference must have been wrongful or unlawful").

> In addition, "to establish causation in a wrongful interference action, the plaintiff must prove that the defendant's *wrongful or unlawful act caused the destruction of the business relationship which was the target of the interference.*" *Medical Mutual* [*Liab.*

14

> *Soc'y of Md.*] v. [*B. Dixon Evander and Assocs.*, 339 Md. 41, 54 (1995)]. See *Alexander v. Evander,* [] 336 Md. at 652; *Macklin v. Robert Logan Assocs.*[,] 334 Md. at 301-302 ("to be actionable, the improper or wrongful conduct must induce the breach or termination of the contract"); *K&K* [*Mgmt.*] *v. Lee* [] 316 Md. at 155.

*Kaser*, 376 Md. at 628-29 (some internal quotation marks removed, string citations omitted, and emphasis added). Specifically, if all the alleged tortfeasor did was breach its own contract with the plaintiff, the cause of action will not lie:

> In *K&K* [*Mgmt.*] *v. Lee,* [] 316 Md. at 160–165, we explained that an act of tortious interference with economic relations is characterized by the defendant's specific purpose to interfere, and that acts which incidentally affect another's business relationships are not a sufficient basis for the tort. In particular, the Court declined to hold that the tort would lie wherever an intentional breach of contract would foreseeably impinge upon a contracting party's economic relations with others. 316 Md. at 168–169.

*Alexander v. Evander*, 336 Md. at 656 (string citations omitted).

Thus, the current complaint does not allege necessary elements of this alternative form of tortious interference. Moreover, it appears that Plaintiff clearly could not. Not only would Plaintiff have to allege that Defendant's conduct toward it was "wrongful" or illegal, which it does not do,[7] but also that it

---

[7] The alleged violations of procurement law took place after the contract between Service 1st and DORS was terminated. Nor does

15

*caused* the "destruction of the business relationship," which it cannot do — at least plausibly given the timeline of events, as discussed above.

## IV. Conclusion

For the foregoing reasons, the motion to dismiss filed by Defendant will be granted, with prejudice. A separate order will follow.

                                                    /s/
                                      DEBORAH K. CHASANOW
                                      United States District Judge

---

Plaintiff explain how it was affected in any way by such alleged violations; any such allegedly illegal conduct cannot form a basis of this claim.